James L. Buchal, OSB No. 921618          THE HONORABLE ADRIENNE C. NELSON
E-mail:  jbuchal@mbllp.com
MURPHY & BUCHAL LLP
P.O. Box 86620
Portland, OR  97286
Tel:  503-227-1011
*Attorney for Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| SUSAN M. LEWIS,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>STOPANTISEMITISM, a private entity, individually and doing business as STOPANTISEMITISM.ORG, and LIORA REZNICHENKO, an individual,<br><br>　　　　　Defendants. | No. 3:25-cv-02082-AN<br><br>**SPECIAL MOTION TO STRIKE OR, IN THE ALTERNATIVE, MOTION TO DISMISS AND MEMORANDUM OF LAW IN SUPPORT THEREOF** |

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................7

FACTUAL BACKGROUND ...........................................................................9

LEGAL STANDARD.....................................................................................12

ARGUMENT ...............................................................................................13

I.      THIS COURT SHOULD GRANT THE SPECIAL MOTION TO STRIKE........13

        A.      The Special Motion to Strike Under Oregon Law ......................................13

        B.      Plaintiffs' Claims Arise Out of Conduct Described in ORS 31.150(2).....16

                1.      The challenged conduct involved public statements on open
                        platforms .......................................................................................16

                2.      Plaintiff's claims arise from a "public issue" or "issue of public
                        interest"........................................................................................17

        C.      Plaintiff Has the Burden of Showing a Probability That She Will
                Prevail on the Merits of Her Claims ..........................................................19

                1.      Plaintiff cannot establish a probability of prevailing on Count 1:
                        Defamation....................................................................................20

                        i.      Defendants' statements are true or substantially true. .......20

                        ii.     Even if the Court finds any characterization debatable, the
                                challenged statements are protected opinion, value
                                judgments, or rhetorical hyperbole under Oregon and
                                Constitutional Law...........................................................24

                2.      Plaintiff cannot establish a probability of prevailing on Count 2:
                        False Light Invasion of Privacy .....................................................26

                        i.      Plaintiff cannot show a "false" portrayal because
                                Defendants' statements accurately reflected Plaintiff's
                                own public posts. .............................................................27

                3.      Plaintiff cannot establish a probability of prevailing on Count 3:
                        Tortious Interference Contractual Relations ..................................28

i.    Defendant's speech cannot constitute "improper
      means" as a matter of law .................................................29

ii.   Plaintiff cannot satisfy Oregon's strict causation
      requirement ......................................................................29

4.    Plaintiff cannot establish a probability of prevailing on Count 4:
      Intentional Infliction of Emotional Distress .................................31

i.    Oregon courts routinely reject IIED claims based on
      criticism, complaints, or public commentary.....................31

ii.   Absence of any special relationship..................................32

iii   Plaintiff's repeated improper use of the term
      "Doxxing". ........................................................................32

CONCLUSION..........................................................................................33

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)...............................................................................12

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)...............................................................................12

*Cagle v. Sattler,*
    761 F. Supp. 3d 1357 (D. Or. 2025) ....................................................13

*Campos v. Jensen,*
    296 Or. App. 402 (2019)..................................................25, 26, 27, 28

*Card v. Pipes,*
    398 F. Supp. 2d 1126 (D. Or. 2004) ..............................................23, 27

*Chief Aircraft, Inc. v. Grill,*
    288 Or. App. 729 (2017)..................................................................25, 28

*DeHart v. Tofte,*
    326 Or. App. 720 (2023)........................................................................32

*Dean v. Guard Publ'g Co.,*
    73 Or. App. 656 (1985)....................................................................26, 27

*Delaney v. Clifton,*
    180 Or. App. 119 (2002)..................................................................31, 32

*Dossett v. Ho-Chunk, Inc.,*
    472 F. Supp. 3d 900 (D. Or. 2020) ......................................................25

*Giordano v. Aerolift, Inc.,*
    109 Or. App. 122 (1991)........................................................................30

*Handy v. Lane County,*
    360 Or. 605 (2016)................................................................................15

*Herrera v. C & M Victor Co.,*
    265 Or. App. 689 (2014)..................................................................29, 30

*House v. Hicks,*
    218 Or. App. 348 (2008)..................................................................31, 32

*Kovac v Crooked River Ranch Club & Maintenance Ass'n.*
    214 Or. App. 507, 166 P.3d 620 (2007)..............................................29

*Magenis v. Fisher Broad.,*
    Inc., 103 Or. App. 555 (1990)..........................................................26

*McGanty v. Staudenraus,*
    321 Or. 532 (1995)...................................................................28, 31

*McNabb v. Oregonian Publ'g Co.,*
    69 Or. App. 136 (1984)....................................................................26

*Muresan v. Philadelphia Romanian Pentecostal Church,*
    154 Or. App. 465 (1998)..................................................................27

*Neumann v. Liles,*
    358 Or. 706 (2016)......................................................20, 24, 25, 26-27

*Northwest Natural Gas Co. v. Chase Gardens, Inc.,*
    328 Or. 487 (1999)..........................................................................28

*Nygard, Inc. v Uusi-Kerttula,*
    (2008) 159 Cal.App.4th 1027 ..........................................................17

*Obsidian Finance Group v. Cox,*
    812 F.Supp.2d 1220 (D. Or. 2011) ..................................................26

*Phillips v. Lincoln Cty. Sch. Dist.,*
    161 Or. App. 429 (1999)..................................................................27

*Reesman v. Highfill,*
    327 Or. 597 (1998)...................................................................26, 28

*Rosenthal v. Erven,*
    172 Or. App. 20 (2001)..............................................................31, 32

*Shay v. Paulson,*
    131 Or. App. 270 (1994)..................................................................31

*Simpson v. Burrows,*
    90 F. Supp. 2d 1108 (D. Or. 2000) ..............................................20, 24

*Slover v. Oregon State Bd. of Clinical Social Workers,*
    144 Or. App. 565 (1996)..................................................................28

*Snyder v. Phelps*,
    562 U.S. 443 (2011) ............................................................17, 18, 19

*Staten v. Steel*,
    222 Or. App. 17 (2008) ...............................................14, 15, 16, 16, 32

*Volm v. Legacy Health Sys.*,
    237 F. Supp. 2d 1166 (D. Or. 2002) ..........................................24

*Wheeler v. Marathon Printing, Inc.*,
    157 Or. App. 290 (1998) ...........................................................31

**Statutes**

ORS 30.835 ...............................................................................33

ORS 31.150 ...........................................................................*Passim*

ORS 31.152 ...............................................................7, 13, 15, 33

ORS 163.730 ............................................................................33

**Rules**

Fed. R. Civ. P. 12(b)(6) ..........................................................7, 12, 33

## LOCAL RULE 7-1 CERTIFICATION

In compliance with this Rule, the parties made a good faith effort through personal or telephone conferences to resolve the dispute and have been unable to do so.

### Motion

Pursuant to ORS 31.150, Defendants StopAntisemitism, StopAntisemitism.org, and Liora Reznichenko, by and through undersigned counsel, respectfully move this Court to strike the claims asserted by Plaintiff Susan M. Lewis' ("Lewis") against them, or, in the alternative, to dismiss them pursuant to Rule 12(b)(6). The claims asserted against Defendants are Defamation, False Light Invasion of Privacy, Tortious Interference with Contractual Relationships, and Intentional Infliction of Emotional Distress. The factual and legal support for this Motion are set forth below.

WHEREFORE, Defendants respectfully request this Court enter an Order granting this Motion and dismissing all claims in Plaintiff's Complaint, and award Plaintiff her reasonable attorney fees pursuant to ORS 31.152(3).

### Supporting Memorandum of law

### PRELIMINARY STATEMENT

Plaintiff Susan Lewis ("Plaintiff") filed this lawsuit in an effort to silence valid concerns about her hateful public statements. Rather than accept the fact that she caused her own problems by routinely broadcasting toxic statements on Facebook for public consumption, she has blamed a third party for reading her Facebook posts and forming common-sense opinions based upon them. This is a textbook case of a Strategic Lawsuit Against Public Participation ("SLAPP"), in which Plaintiff's unabashedly seek to misuse the courts of Oregon as a tool to silence Defendants' First Amendment activity

in what is quintessentially public space for First Amendment activities.

Plaintiff's Complaint stems from a post on StopAntisemitism.org's website entitled "Corrupting the Classroom," which called attention to Plaintiff's own words and expressed the view that students at Valley Catholic Music School were not safe under Plaintiff's supervision (Reznichenko Decl. ¶¶8–17, 19–21, 24–26; Exs. 1–6). That post, which included quotes and screenshots from Plaintiff's publicly available social media profile, did not alter or misrepresent her words *(id. ¶¶19–21; Exs. 1–6)*. It simply framed them as an example of dangerous antisemitism, a conclusion StopAntisemitism is entitled to reach and express under the First Amendment and Article I, Section 8 of the Oregon Constitution *(id. ¶¶19–21, 24–26; Exs. 1–6)*. Nevertheless, Plaintiff now seeks to hold Defendants liable for defamation, false light invasion of privacy, tortious interference, and intentional infliction of emotional distress.

Each of Plaintiff's claims fails as a matter of law. First, the defamation claim is barred by long-settled free speech protections. Oregon courts do not permit defamation claims based on rhetorical hyperbole, value judgments, or nonactionable opinion. The blog post featured screenshots of Plaintiff's public Facebook posts *(*Reznichenko Decl. ¶¶10–17; Exs. 1–6)*, which are still available today *(id. ¶9)*, accompanied by statements either paraphrasing or characterizing Plaintiff's own words *(id. ¶¶19–21, 24–26)*. Those statements are constitutionally protected expressions, particularly when based on the Plaintiff's own publicly disseminated speech *(id. ¶¶19–21)*. Defendants' statements and characterizations are accurate characterizations of Plaintiff's posts, and because the blog post included Plaintiff's posts, clearly showing them in the blog post invites the reader to form their own opinion.

Second, Plaintiff's false light claim fails because Defendants did not portray her in any false manner. Every challenged statement is either opinion, rhetorical hyperbole, or a characterization drawn directly from Plaintiff's own publicly available posts *(id.* ¶¶19–21, 24–26; Exs. 1–6)*. Such statements cannot imply undisclosed false facts and therefore cannot support false light liability, and because the factual basis was fully disclosed to readers *(id.* ¶¶11–12, 20; Exs. 1–6)*, no reasonable person could believe Defendants were asserting a false factual narrative about Plaintiff.

Third, Plaintiff's tortious interference claim fails because it is built on pure conjecture. The Complaint contains no facts about how the school made its employment decision, what information it relied on, or whether Defendants played any role at all *(id.* ¶22–23)*. Plaintiff simply infers causation without pleading a single fact to support it. Additionally, nothing alleged constitutes "improper means." Republishing Plaintiff's own public posts and adding commentary *(id.* ¶¶9–17, 20–21; Exs. 1–6)*, however critical, is in no way improper. Because Plaintiff pleads neither causation nor improper means, her tortious interference claim fails.

Finally, the intentional infliction of emotional distress claim should be dismissed outright. Screenshotting Plaintiff's own posts and reposting them *(id*. ¶¶9–17, 20–21; Exs. 1–6) does not constitute outrageous conduct, and likewise, neither does calling out antisemitism, even in strong terms. The courts have consistently held that robust, even severe, criticism is not enough to meet the extreme threshold required to plead an IIED claim.

For all these reasons, Defendants respectfully request that the Court dismiss Plaintiff's Complaint in its entirety and with prejudice.

## FACTUAL BACKGROUND

StopAntisemitism.org is a grassroots watchdog organization formed in 2018 to address the troubling rise of violence and hate-speech against the Jewish people (*id*. ¶1, 3). Its mission is to highlight groups and individuals that exhibit anti-Semitic behaviors in an effort to raise awareness and prevent similar conduct (*id*. ¶3). One of its tools is a weekly blog highlighting individuals who have publicly demonstrated their anti-Semitic attitudes (*id*. ¶4–5). Typically, the parties featured on the blog have enthusiastically expressed and confirmed their anti-Semitic and anti-Israel views, either through social media or otherwise (*id*. ¶5). The blog draws on publicly available content, typically the subject's own words, and offers commentary intended to raise awareness (*id*. ¶6).

In July 2024, Plaintiff Susan Lewis, a professional musician and music teacher, was featured in one such blog post titled Corrupting the Classroom (*id*. ¶8–10). The post included direct quotes from Plaintiff's Facebook posts, which StopAntisemitism characterized as promoting antisemitic tropes (*id*. ¶¶8–17, 18–21; Exs. 1–6). Plaintiff's Complaint hinges on four statements made by Defendants: "Calls upon Hamas to Destroy Israel;" "Denies the Jewish connection to Israel;" "Claims Jews control humanity"; and concluding with "Students at Valley Catholic are in grave danger under Sue Lewis" (*id*. ¶8–17; Exs. 1–6). All of the quotes in the blog post were presented alongside screenshots of Plaintiff's public Facebook profile, which, at the date of this motion, remains public (*id*. ¶9, 11; Exs. 1–6).

At the time of the blog's publication, Plaintiff was teaching at Valley Catholic Music School as an independent contractor for the 2023–2024 academic year. Shortly after the blog post was published, her contract was not renewed. Plaintiff now brings

this action claiming that the blog post caused the non-renewal of her contract and seeks damages under several tort theories, including defamation, false light invasion of privacy, tortious interference, and intentional infliction of emotional distress.

Defendant's Statements:

Plaintiff brings this action based on the following statements (*id*. ¶10, 13-17; Exs. 1–6):

1.    *"Calls upon Hamas to Destroy Israel"*

This statement was written in response to Plaintiff's public Facebook postdated November 2, 2023, stating: "Yeah these Hamas militants are going to wipe out Israel with their homemade bombs, small arms, hang gliders, grenades and sling shots. Be afraid, be very afraid." (*Id*. ¶13; Ex. 2.)

2.    *"Denies the Jewish connection to Israel"*

This statement was written in response to Plaintiff's public Facebook postdated October 22, 2018, where Plaintiff reshared a graphic declaring: "If Jewish people want their own state they shouldn't not put it on someone else's state. Genocide is no way to make a state!" (*id*. ¶14; Ex. 3)*,* as well as Plaintiff's public Facebook post in which she reshared a mock dictionary-style image defining Zionism as: "An inherently violent & terroristic movement for colonizing Palestine through the theft of Palestinian land and the ethnic cleansing of indigenous Palestinians in order to create a Jewish-supremacist settler colony." (*Id*. ¶15; Ex. 4.)

3.    *"Claims the Jews Control Humanity"*

This was written in response to Plaintiff's public Facebook post stating: "Zionist Jews have managed to mentally condition humanity to accept and remain silent as they commit genocide in Palestine." It is a near word-for-word recitation. (*Id*. ¶16; Ex. 5.)

4.      *"Students at Valley Catholic are in grave danger under Sue Lewis."*

This statement was made in the context of all of the above, as well as screenshots of Plaintiff's public photo posted on February 16, 2024, in which she is wrapped in a keffiyeh, with her face fully covered save for her eyes and glasses.  (*Id*. ¶17; Ex. 6.)  As of the date of this Complaint, the photo is still publicly available on Plaintiff's Facebook profile.  (*Id*. ¶9.)

## LEGAL STANDARD

Plaintiff's Complaint fails to state any valid claim against Defendants Liora Reznichenko, StopAntisemitism, and StopAntisemitism.org.  Oregon's anti-SLAPP statute, ORS 31.150, provides an early mechanism to dismiss claims targeting speech made in a public forum on matters of public interest.  Once a defendant shows the claims arise from protected activity, the burden shifts to the plaintiff to present substantial evidence establishing a probability of prevailing on each element. ORS 31.150(3).  Claims based on opinion, rhetorical commentary, or expressions grounded in disclosed facts cannot meet this burden as a matter of law.  Because Plaintiff challenges Defendants' public commentary about Plaintiff's own publicly-posted statements, Plaintiff's claims fall squarely within the protections of ORS 31.150.

Even apart from the anti-SLAPP statute, the Complaint fails under Rule 12(b)(6).  To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.

Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal quotation and citation omitted). Allegations that are implausible on their face, or merely conclusory, must be dismissed.

It should be noted that federal courts sitting in diversity do apply Oregon's anti-SLAPP statute, ORS 31.150, and have expressly confirmed its availability in federal proceedings. In *Cagle v. Sattler*, the District of Oregon held that "because plaintiff invokes the Court's diversity jurisdiction, Oregon's anti-SLAPP procedure is available in this action," and proceeded to analyze the special motion to strike under the federal Rule 12(b)(6) framework. *Cagle v. Sattler*, 761 F. Supp. 3d 1357, at 1361–62 (D. Or. 2025)

## ARGUMENT

## I.     THIS COURT SHOULD GRANT THE SPECIAL MOTION TO STRIKE.

### A.     The Special Motion to Strike Under Oregon Law.

ORS 31.150 provides a "special motion to strike," which may be made under this section against any claim in a civil action that arises out of:

> "(c) Any oral statement made, or written statement or other document presented, in a place open to the public or a public forum in connection with an issue of public interest; or
>
> "(d) Any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."

ORS 31.150(2).

The special motion to strike is "to be liberally construed in favor of the exercise of the rights of expression described in ORS 31.150(2)," including subsections (c) & (d). ORS 31.152(4). An ORS 31.152(4) motion may be brought in federal courts sitting in

diversity.  *Cagle v. Sattler*, 761 F. Supp. 3d 1357, at 1361–62 (D. Or. 2025)**.**

Defendants have "the initial burden of making a prima facie showing that the claim against which the motion is made arises out of a statement, document or conduct described in subsection (2) of this section" and, having met that burden, "the burden shifts to the plaintiff in the action to establish that there is a probability that the plaintiff will prevail on the claim by presenting substantial evidence to support a prima facie case".  ORS 31.150(3).

In other words, ORS 31.150 requires the court to engage in a two-pronged process to decide the special motion to strike.  The Court first decides whether defendants have met the threshold burden of showing that plaintiff's claims against them arise from statements or conduct covered by ORS 31.150(2)(c) or (d) (the "arising out of" prong).  We demonstrate that below.

When the court finds defendants have made this threshold showing, the burden of proof and persuasion shifts to plaintiff to show "that there is a probability that the plaintiff will prevail on the claim by presenting substantial evidence to support a prima facie case."  ORS 31.150(3). *Staten v. Steel*, 222 Or. App. 17, 27 (2008), *rev. den.*, 345 Or. 618 (2009).

If the plaintiffs fail to meet their burden for any reason, whether legal or due to lack of substantial evidence, the Court is to grant defendants' motion and enter a judgment of dismissal without prejudice. ORS 31.150(1).  A losing plaintiff may elect to stand on the dismissed pleading and immediately appeal or may refile its case with different pleadings.  A losing defendant may choose to immediately appeal the denial of the Special Motion under a limited judgment.  (*Id*).  For this reason, in most cases, upon

decision of this motion, the case will no longer be before the trial court, either because it has been dismissed or because it has been appealed.

The role of the Court with respect to the evaluation of evidence in an anti-SLAPP motion is unique in Oregon civil procedure. Crucially, and unlike the Court's role upon summary judgment, the Court in substance weighs the evidence and grant the motion if Plaintiff fails to provide "substantial evidence to support a *prima facie* case".

This particular evidentiary standard was added by the Oregon Legislature to the anti-SLAPP template provided by the California statute. Its adoption demonstrates an intent to require more than a bare "prima facie case," by requiring "substantial evidence" to support such a case. The Oregon Court of Appeals has explained that Plaintiff carries a "heav[y] burden" to defeat this motion:

> If the moving party makes that showing, which it may be able to do based on the pleadings alone, the nonmoving party then has the burden of establishing a prima facie case that is sufficient to show that there is a probability that it will prevail. That burden is potentially much heavier than merely establishing the existence of a disputed issue of fact. In deciding whether the plaintiff has met its burden, the trial court may need to weigh the evidence, something that it cannot do on a motion for summary judgment."

*Staten*, 222 Or. App. at 31 (citations omitted) (emphasis added).

In short, while under summary judgment procedure, a finding of the slightest evidentiary dispute on a material fact requires the Court to deny the motion, in the special motion procedure, "some" evidence does not suffice. Should there be any dispute of fact, then plaintiff's evidence on that fact must outweigh contrary evidence in the record, and be sufficient to invoke the right to a jury resolution of the claims, *see Handy v. Lane County*, 360 Or. 605, 618 n.9 (2016). And whether the evidence is sufficient to reach the jury must be evaluated, as set forth below, in light of both the

First Amendment's restriction of jury consideration in cases such as this, and the express intent of the Legislature, stated in ORS 31.152(4), that the special motion is meant to provide a defendant with the right to not proceed to trial in cases in which the plaintiff does not meet the burden specified in ORS 31.150(3).

### B.    Plaintiff's Claims Arise Out of Conduct Described in ORS 31.150(2).

Under ORS 31.150(3), the court must first decide whether a plaintiff's claim "arises out of a statement, document or conduct described in subsection (2) of this section." Here, Plaintiff's claims against Defendants involve "oral statement[s] made . . . in a place open to the public or a public forum in connection with an issue of public interest" (ORS 31.150(2)(c)); the entire claim arises from "conduct in the furtherance of the exercise of the constitutional right of . . . free speech in connection with a public issue or an issue of public interest" (ORS 31.150(2)(d)). *See generally Staten,* 222 Or App at 27.

### 1.    The challenged conduct involved public statements made on widely accessible online platforms.

The conduct at issue consists solely of Defendants' public statements posted on open, online platforms, visible to anyone who chose to read them (Reznichenko Decl. ¶¶8–9). Plaintiff herself placed the underlying posts into the public sphere by publishing them on her own social media profile, where they were available for unrestricted viewing (*id.* ¶¶8-17; Exs. 2–6). Defendants responded in kind: by reposting, quoting, and commenting on material already made public (*id.* ¶¶19–21). Online posting is a form of speech no different in principle from speaking on a street corner or distributing a flyer; it is simply the contemporary medium through which individuals communicate publicly. That the statements occurred on the Internet, rather than in person, does not

diminish their character as public expression.

> **2.** **Plaintiff's claims arise from a "public issue" or "an issue of public interest."**

The U.S. Supreme Court provided extensive guidance in distinguishing between matters of public or private concern is *Snyder v. Phelps*, 562 U.S. 443, (2011). The case upheld the right of the infamous Westboro Baptist Church to picket military funerals "to communicate its belief that God hates the United States for its tolerance of homosexuality". (*Id.* at 443.) The case confirms that defendants' conduct relates to a matter of public concern, establishes that the protections of the First Amendment are a zenith with respect to such conduct, and further demonstrates that its offensive nature to plaintiffs (and perhaps others) requires careful court protection.

The Court held:

"Speech deals with matters of public concern when it can 'be fairly considered as relating to any matter of political, social, or other concern to the community, *Connick*, supra, at 146, 103 S. Ct. 1684, 75 L. Ed. 2d 708, or when it 'is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public,' *San Diego*, supra, at 83-84, 125 S. Ct. 521, 160 L. Ed. 2d 410. *See Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 492-494, 95 S. Ct. 1029, 43 L. Ed. 2d 328 (1975); *Time, Inc. v. Hill*, 385 U.S. 374, 387-388, 87 S. Ct. 534, 17 L. Ed. 2d 456 (1967). The arguably 'inappropriate or controversial character of a statement is irrelevant to the question whether it deals with a matter of public concern.' *Rankin v. McPherson*, 483 U.S. 378, 387, 107 S. Ct. 2891, 97 L. Ed. 2d 315 (1987)."

*Snyder*, 562 U.S. at 453.

Under California law, upon which Oregon's law is modeled[1], "the issue need not [even] be "significant" to be protected by the anti-SLAPP statute—it is enough that it is

---

[1] The Oregon Legislature "intended California case law would inform Oregon courts regarding the application of ORS 31.150 to ORS 31.155." *Page v. Parsons*, 249 Or. App. 445, 461 (2012).

one in which the public takes an interest." *Nygard, Inc. v Uusi-Kerttula,* (2008) 159

Cal.App.4th 1027, 1041.

The U.S. Supreme Court further confirmed that

>"[S]peech on 'matters of public concern' . . . is 'at the heart of the First
>Amendment's protection.' *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.,*
>472 U.S. 749, 758-759, 105 S. Ct. 2939, 86 L. Ed. 2d 593 (1985) (opinion of
>Powell, J.) (quoting *First Nat. Bank of Boston v. Bellotti*, 435 U.S. 765, 776, 98
>S. Ct. 1407, 55 L. Ed. 2d 707 (1978)). The First Amendment reflects 'a profound
>national commitment to the principle that debate on public issues should be
>uninhibited, robust, and wide-open." *New York Times Co. v. Sullivan*, 376 U.S.
>254, 270, 84 S. Ct. 710, 11 L. Ed. 2d 686 (1964). That is because "speech
>concerning public affairs is more than self-expression; it is the essence of self-
>government." *Garrison v. Louisiana*, 379 U.S. 64, 74-75, 85 S. Ct. 209, 13 L.
>Ed. 2d 125 (1964). Accordingly, speech on public issues occupies the highest
>rung of the hierarchy of First Amendment values, and is entitled to special
>protection.' *Connick v. Myers*, 461 U.S. 138, 145, 103 S. Ct. 1684, 75 L. Ed. 2d
>708 (1983) (internal quotation marks omitted)."

*Snyder*, 562 U.S. at 451-452.

>The Court also emphasized that

>"Such speech cannot be restricted simply because it is upsetting or arouses
>contempt. 'If there is a bedrock principle underlying the First Amendment, it is
>that the government may not prohibit the expression of an idea simply because
>society finds the idea itself offensive or disagreeable.' *Texas v. Johnson*, 491
>U.S. 397, 414, 109 S. Ct. 2533, 105 L. Ed. 2d 342 (1989). Indeed, 'the point of
>all speech protection . . . is to shield just those choices of content that in
>someone's eyes are misguided, or even hurtful.' *Hurley v. Irish-American Gay,
>Lesbian and Bisexual Group of Boston, Inc.,* 515 U.S. 557, 574, 115 S. Ct. 2338,
>132 L. Ed. 2d 487 (1995)."

*Snyder*, 562 U.S. at 458.

> A motion to dismiss pursuant to ORS 31.150 is particularly appropriate because,

>"[i]n a case such as this, a [Multnomah County] jury is 'unlikely to be neutral
>with respect to the content of [the] speech," posing "a real danger of becoming
>an instrument for the suppression of . . . "vehement, caustic, and sometimes
>unpleasan[t]" ' expression. *Bose Corp.*, 466 U.S., at 510, 104 S. Ct. 1949, 80 L.
>Ed. 2d 502 (quoting *New York Times*, 376 U.S., at 270, 84 S. Ct. 710, 111 L. Ed.
>2d 686). Such a risk is unacceptable; 'in public debate [we] must tolerate
>insulting, and even outrageous, speech in order to provide adequate "breathing

space'" to the freedoms protected by the First Amendment." *Boos v. Barry*, 485 U.S. 312, 322, 108 S. Ct. 1157, 99 L. Ed. 2d 333 (1988) (some internal quotation marks omitted)."

*Snyder*, 562 U.S. at 458.

The issue of antisemitism in educational environments is a matter of substantial public concern and ongoing national debate. When an educator publicly posts statements minimizing acts of terrorism, dismissing reports of sexual violence, or promoting rhetoric hostile to Jewish students, those statements naturally invite scrutiny regarding student safety and professional suitability (Reznichenko Decl. ¶5). Plaintiff placed these statements in the public sphere herself, and they remained available for anyone to read directly (*id.* ¶¶9–17; Exs. 2–6).

Defendants did nothing more than republish those publicly accessible posts and express viewpoints that essentially summarized and reacted to the content Plaintiff had already made public (*id.* ¶¶24–26; Ex. 1). Criticizing an educator's publicly disseminated statements, and articulating concerns about their implications, is lawful, appropriate, and firmly within the protections of the First Amendment.

In short, Defendants have met their burden under ORS 31.150(2). Plaintiff's claims arise from "conduct in furtherance of the constitutional right to free speech in connection with a public issue or an issue of public interest," and from written statements made "in a place open to the public or a public forum in connection with an issue of public interest."

### C. Plaintiff Has the Burden of Showing a Probability That She Will Prevail on the Merits of Her Claims.

The burden now shifts to Plaintiff to affirmatively demonstrate she has "substantial evidence" to support her claims, and "that there is a probability" that she

will prevail on the merits of her claims.  Plaintiff will not be able to satisfy her *prima facie* burden for any of her four common-law tort claims against Liora Reznichenko, StopAntisemitism, and StopAntisemitism.org.  Plaintiff's claims against Defendants must be dismissed.  All four claims: defamation (Count I); false light invasion of privacy (Count II); tortious interference with a contractual business relationship (Count III); and, intentional infliction of emotional distress (Count IV).

> **1.    Plaintiff cannot establish a probability of prevailing on Count 1: Defamation.**

>> **i.    Defendants' statements are true or substantially true.**

A defamation claim cannot survive unless the plaintiff plausibly alleges that the defendant published a false statement of fact.  Falsity is the "threshold element" of defamation; without it, the claim fails as a matter of law.  Courts in Oregon, the Ninth Circuit, and nationwide have consistently held that liability cannot attach to statements that are true, substantially true, or not capable of being proven true or false.  *See, e.g*., *Simpson v. Burrows*, 90 F. Supp. 2d 1108, 1126 (D. Or. 2000) ("A statement cannot be deemed false unless it is susceptible of being proved true or false."); *Neumann v. Liles*, 358 Or. 706, 719–21 (2016) (only assertions of objectively verifiable fact can be actionable).  We will analyze each statement in turn as follows:

>> *a.    "Calls upon Hamas to Destroy Israel"*

The challenged characterization fairly reflects the unmistakable implications of Plaintiff's own words—words that trivialize, mock, and legitimize Hamas at a moment of unprecedented violence.  In a November 2, 2023 Facebook post, Plaintiff wrote: "Yeah these Hamas militants are going to wipe out Israel with their homemade bombs,

small arms, hang gliders, grenades and sling shots.  Be afraid, be very afraid."
(Reznichenko Decl. ¶13; Ex. 2.)  It is important to note that this was posted on
November 2, 2023—less than one month after Hamas's October 7 terrorist attacks, in
which Hamas fighters used paragliders to infiltrate the Nova music festival[2], threw
grenades into homes and civilian bomb shelters,[3] massacred more than a thousand
civilians and took over 250 living hostages. [4]

A reasonable reader understands the post as mocking Israel's fear, minimizing
the brutality of Hamas's attack, and sarcastically belittling the very weapons Hamas had
just used to torture, murder, and abduct Israeli civilians.  At a time when the world was
still reeling from the slaughter at Nova and the mass executions in southern Israeli
towns, Plaintiff's rhetoric reads as a message of derision toward the victims and implicit
solidarity with the perpetrators.

Critically, Hamas's publicly declared mission—in both its founding and updated
doctrinal documents—is the elimination of the State of Israel.  The 1988 Hamas Charter
states plainly in its preamble that "Israel will exist and will continue to exist until Islam
will obliterate it."  *Hamas Charter (Covenant of the Islamic Resistance Movement)*
*(Aug. 18, 1988).*[5]  Article 6 further declares Hamas's goal to "raise the banner of Allah

---

[2] How Hamas built a force to attack Israel on 7 October, *BBC*.
https://www.bbc.com/news/world-middle-east-67480680.

[3] Chilling video shows Israeli soldier toss grenades back at Hamas terrorists, saving
several people. *New York Post*. https://nypost.com/2023/11/14/news/israeli-soldier-in-
shelter-tossed-grenades-back-at-hama-terrorists-saving-several-people-video/.

[4] These are the hostages released from Gaza, and whose bodies still remain, CNN.
https://www.cnn.com/interactive/2023/12/world/hostage-israel-hamas-deal-dg/.

[5] Hamas Charter (Covenant of the Islamic Resistance Movement) (Aug. 18, 1988),
https://avalon.law.yale.edu/21st_century/hamas.asp.

over every inch of Palestine," and Article 15 frames the "Zionist project" as fundamentally incompatible with Palestinian liberation. (*Id.*) The organization's 2017 "Document of General Principles and Policies" reaffirmed the same objective in more formal political terms, emphasizing that all of Palestine "from the River Jordan to the Mediterranean" is an indivisible Islamic trust, and that the "usurping Zionist entity" is illegitimate and has no lawful place in that territory. *Hamas, A Document of General Principles and Policies (May 1, 2017).* [6] The phrasing "Calls upon Hamas to destroy Israel" captures the gist of Plaintiff's rhetoric.

Because this characterization is grounded in Plaintiff's own words, in the indisputable facts of Hamas's mission and actions (of which this Court is requested to take judicial notice pursuant to Fed. R. Evid. 201), and in the catastrophic context in which she chose to speak, it is substantially true, defeating any claim of falsity.

> b.      *"Denies the Jewish connection to Israel"*

This statement is also substantially true. Plaintiff publicly reshared a graphic stating: "If Jewish people want their own state they shouldn't not put it on someone else's state. Genocide is no way to make a state!" Reznichenko Decl. ¶14; Ex. 3.) By declaring that Israel is "someone else's state," Plaintiff explicitly rejects any Jewish historical, national, or indigenous claim to the land. She reinforced that view in another post defining Zionism as: "An inherently violent & terroristic movement… for colonizing Palestine… to create a Jewish-supremacist settler colony." (*Id.* ¶15; Ex. 4.) This definition labels the Jewish return to Israel as colonial theft, ethnic cleansing, and

---

[6] Hamas, A Document of General Principles and Policies (May 1, 2017), https://www.middleeastpolicy.org/sites/default/files/documents/Hamas-2017-Document.pdf.

Jewish supremacy—each of which denies a legitimate Jewish connection or ancestral tie

to the land.  Taken together, these posts unmistakably express Plaintiff's belief that Jews

lack an indigenous connection to Israel.  Defendants' statement is therefore a precise and

accurate summary of Plaintiff's own expressed views, and thus substantially true.

      c.      *"Claims the Jews Control Humanity"*

This is a verbatim reflection of Plaintiff's own words.  Plaintiff shared a post

stating:  "Zionist Jews have managed to mentally condition humanity to accept and

remain silent as they commit genocide in Palestine."  (Reznichenko Decl. ¶16; Ex. 5.)

To assert that "Zionist Jews" have "mentally conditioned humanity" is to claim that

Jews exert global psychological control—an explicit claim of power over "humanity."

This is not metaphorical or ambiguous; it directly advances a classic antisemitic

conspiracy trope.  Defendants' phrasing—"claims Jews control humanity"—is not an

exaggeration but a near literal restatement of the post Plaintiff chose to rebroadcast.

Because the "sting" of the statement is identical to the meaning of Plaintiff's own words,

the characterization is substantially true as a matter of law.

      d.      *"Students at Valley Catholic are in grave danger under Sue Lewis."*

Viewed in context, this statement reflects a substantially true assessment of

Plaintiff's public conduct and self-presentation.  Plaintiff's social-media posts endorsed

violent rhetoric toward Israel (Reznichenko Decl. ¶13; Ex. 2), denied the Jewish

historical connection to the land (*id*. ¶¶14–15; Exs. 3–4), and advanced conspiracy

theories that Jews "mentally condition humanity" (*id*. ¶16; Ex. 5;).  She paired this with

a photograph of herself in a keffiyeh, a symbol widely associated with armed terrorism,

including groups like Hamas (*id*. ¶17; Ex. 6).  Plaintiff is an educator responsible for the

safety and well-being of students, including Jewish students who may reasonably

experience these statements and images as hostile or threatening.  Given Plaintiff's own

public advocacy, it is substantially true that her conduct created a reasonable perception

of danger or unfitness from the standpoint of affected students and parents.  Defendants

reasonably regard educators who adopt the uniform of terrorists and support their

terrorism as threatening the well-being of students.  The "grave danger" statement

accurately captures the real-world implications of Plaintiff's rhetoric and imagery for her

school community, and therefore reflects a truthful assessment grounded in disclosed

facts. (*id.* ¶¶24–26),

> ii.  **Even if the Court finds any characterization debatable, the challenged statements are protected opinion, value judgments, or rhetorical hyperbole under Oregon and Constitutional Law.**

Even assuming *arguendo* that any of the challenged statements could be viewed

as interpretive, each statement constitutes non-actionable opinion, value-laden

commentary, or rhetorical hyperbole drawn from disclosed facts (Reznichenko Decl.

¶¶12–17, 24–26; Exs. 2–6).  Oregon law, guided by the First Amendment, Article I,

section 8, and the framework articulated in *Neumann v. Liles*, 358 Or. 706 (2016),

distinguishes between verifiable factual assertions and protected evaluative commentary.

The statements at issue fall firmly on the protected side.

Under *Neumann*, courts evaluate:  (1) the overall tenor of the publication; (2)

whether the language is figurative or hyperbolic; and, (3) whether the statement is

capable of being proven true or false.  (*Id*. at 719–21.)  Applying this test, Oregon and

federal courts routinely dismiss claims where the challenged statement expresses a

subjective judgment or a reaction to disclosed facts.  *See Simpson v. Burrows*,

90 F. Supp. 2d 1108, 1126 (D. Or. 2000); *Volm v. Legacy Health Sys.,* 237 F. Supp. 2d 1166, 1172 (D. Or. 2002).

Because Defendants disclosed every factual basis, Plaintiff's own posts and screenshots (Reznichenko Decl. ¶¶10–17, 19–20; Exs. 1–6), the resulting commentary cannot reasonably be understood as asserting undisclosed or provably false facts.

Courts treat characterizations of another's statements as classic opinion when readers are given the underlying material. *See Card v. Pipes*, 398 F. Supp. 2d 1126, 1134 (D. Or. 2004) ("when the speaker discloses the factual basis for their view, the resulting characterization is a nonactionable opinion"). Likewise, Oregon courts consistently hold that evaluative labels—such as "crooked," "guilty," or terms expressing moral condemnation—are subjective judgments, not verifiable accusations. *See Neumann*, 358 Or. at 723–24; *Campos v. Jensen*, 296 Or. App. 402, 412–14 (2019); *Chief Aircraft, Inc. v. Grill*, 288 Or. App. 729, 744–45 (2017). Federal courts applying Oregon law reach the same conclusion. *See Dossett v. Ho-Chunk, Inc*., 472 F. Supp. 3d 900, 918 (D. Or. 2020).

The first three statements challenged here, "Calls upon Hamas to destroy Israel," "denies the Jewish connection to Israel," or "claims Jews control humanity," are paradigmatic subjective characterizations of Plaintiff's own publicly posted words (Reznichenko Decl. ¶¶13–17, 19–21, 24–26; Exs. 1–5). Readers are shown the underlying posts and invited to draw their own conclusions; this is precisely the kind of evaluative commentary that, *Neumann, Campos*, and *Simpson* hold to be protected. Because the statements are neither verifiable nor imply undisclosed facts, they are non-actionable as a matter of law.

The final challenged statement, "Students at Valley Catholic are in grave danger under Sue Lewis," is paradigmatic rhetorical hyperbole. Oregon and Ninth Circuit courts consistently treat such heightened, emotional language as non-actionable. In *Obsidian Finance Group v. Cox*, accusations that someone was a "criminal," "fraud," or had "acted illegally" were hyperbolic criticism when read in context, not factual assertions. 812 F.Supp.2d 1220, 1228–29 (D. Or. 2011). In *Campos*, the term "100% guilty," an objectively extreme phrase, was protected as opinion. Under *Neumann*, this is non-actionable as a matter of law.

> **2.     Plaintiff cannot establish a probability of prevailing on Count 2: False Light Invasion of Privacy.**

False light in Oregon is closely related to defamation but protects against emotional distress from being placed in a highly offensive false portrayal, rather than injury to reputation. *Reesman v. Highfill*, 327 Or. 597, 604 (1998); *Magenis v. Fisher Broad.*, 103 Or. App. 555, 559 (1990). The tort requires Plaintiff to prove that: (1) Defendant publicized matter placing Plaintiff in a highly offensive false light; and, (2) Defendant acted with knowledge of or reckless disregard as to falsity, which is an actual malice standard. *Dean v. Guard Publ'g Co.*, 73 Or. App. 656, 660 (1985); *McNabb v. Oregonian Publ'g Co.*, 69 Or. App. 136, 142 (1984).

Plaintiff cannot meet either element.

First, false light claims fail where the challenged statements are opinion, hyperbole, or rhetorical characterizations. Oregon courts analyze opinion in false light using the *Neumann v. Liles* three-factor test, applied most clearly in *Campos v. Jensen*, 296 Or. App. 402 (2019). It is the same test used in the defamation analysis above. The court must examine the general tenor of the publication, the presence of figurative or

hyperbolic language, and whether the statement is susceptible of being proved true or false. *Neumann*, 358 Or. at 719; *Campos*, 296 Or. App. at 412.

Again, under this standard, *Campos* held that calling someone a "liar," "sexual predator," and "100% guilty" was non-actionable opinion because, in context, the statements expressed personal belief and rhetorical condemnation, not verifiable fact. *Id*. at 413–14. The same is true here. As shown in Section I, each challenged statement is an interpretive characterization of Plaintiff's own posts (for which Defendants disclosed the underlying content, (*see* Reznichenko Decl. ¶ 9–17, 19-21; Ex. 2-6), or is rhetorical hyperbole such as "grave danger," which no reasonable reader would interpret as a literal assertion of fact. Under *Campos*, these are protected opinions, not factual portrayals capable of supporting false light.

> i.    **Plaintiff cannot show a "false" portrayal because Defendants' statements accurately reflected Plaintiff's own public posts.**

False light requires a false implication. *Phillips v. Lincoln Cty. Sch. Dist.*, 161 Or. App. 429, 433 (1999). Where the portrayal restates or fairly characterizes the Plaintiff's own public statements, there is no falsity. As in *Card v. Pipes*, 398 F. Supp. 2d 1126 (D. Or. 2004), Defendants here provided Plaintiff's own posts and summarized them (Reznichenko Decl. ¶ 10-17, 19–21; Ex. 1-6). Oregon law treats such commentary as non-actionable because readers can draw their own conclusions. (*Card*, 398 F. Supp. at 1134.) Interpretations of Plaintiff's statements cannot be deemed "false" when the original statement was provided. It is squarely opinion.

Additionally, false light requires knowledge of falsity or reckless disregard, even for private plaintiffs. *Dean*, 73 Or. App. at 660; *Muresan v. Philadelphia Romanian Pentecostal Church,* 154 Or. App. 465, 473 (1998). Plaintiff alleges none of the

required facts.  Defendants quoted Plaintiff's own statements, linked to the original

posts, and expressed interpretations grounded in disclosed material (Reznichenko Decl.

¶¶10–17, 19–21, 24–26; Exs. 1–6).  Where the defendant shows the underlying facts,

actual malice cannot be inferred.  *Slover v. Oregon State Bd. of Clinical Social Workers*,

144 Or. App. 565, 572 (1996).

A false light portrayal must be so offensive that "a reasonable person would be

seriously aggrieved."  *Reesman*, 327 Or. at 605.  False light is reserved for portrayals so

extreme that a reasonable person would be "seriously aggrieved." (*Id.*)  Oregon courts

consistently reject false light claims where the content consists of harsh criticism, moral

judgments, accusations rooted in political or social debate.  *See Campos,* 296 Or. App. at

414; *Chief Aircraft*, 288 Or. App. at 744.  Here, the blog post addressed matters of

intense public concern, namely Hamas, antisemitism, student safety, and criticized

Plaintiff's publicly posted views (Reznichenko Decl. ¶¶5–6, 8, 12–17; Exs. 1–6).

Oregon courts do not treat political condemnation as "highly offensive" for false-light

purposes.

### 3.    Plaintiff cannot establish a probability of prevailing on Count 3: Tortious Interference Contractual Relations.

Plaintiff's tortious interference claim cannot survive because she cannot satisfy

the six elements of the tort set out in *McGanty v. Staudenrau*:

> "(1) the existence of a professional or business relationship (which could include, e.g., a contract or a prospective economic advantage), (2) intentional interference with that relationship, (3) by a third party, (4) accomplished through improper means or for an improper purpose, (5) a causal effect between the interference and damage to the economic relationship, and (6) damages."

*McGanty v. Staudenraus*, 321 Or. 532, 535 (1995).

Oregon law requires both *improper means*, meaning conduct independently

wrongful, and *causation*, a showing that the defendant's conduct was a substantial factor in the termination. *See Northwest Natural Gas Co. v. Chase Gardens, Inc.*, 328 Or. 487, 498–99 (1999).

### i.    Defendants' speech cannot constitute "Improper Means" as a matter of law.

Oregon courts have repeatedly held that constitutionally protected expression cannot be deemed "improper means" for purposes of tortious interference. In *Kovac v. Crooked River Ranch Club & Maintenance Ass'n*, the Court of Appeals rejected a tortious-interference claim where the defendant allegedly influenced the plaintiff's employment by making complaints and communications, holding that advocacy, persuasion, or even vigorous criticism do not constitute improper means because penalizing such speech "could not survive challenge under Article I, section 8." *Kovac v Crooked River Ranch Club & Maintenance Ass'n.* 214 Or. App. 507, 519, 166 P.3d 620 (2007).

Here, Defendants engaged solely in protected commentary on Plaintiff's publicly posted statements—quoting her posts, offering disclosed-fact interpretations, and expressing opinions on matters of public concern (see Reznichenko Decl. ¶¶8–9, 19–21; Exs. 2–6). Under *Kovac, McGanty*, and *Northwest Natural Gas Co.*, such expression cannot as a matter of law supply the "improper means" element.

### ii.    Plaintiff cannot satisfy Oregon's strict causation requirement.

Oregon imposes a heightened causation standard for tortious interference, particularly where a termination decision follows an internal investigation. The leading case, *Herrera v. C & M Victor Co.*, 265 Or. App. 689 (2014), holds that statements that

merely trigger an employer investigation are insufficient:

> "Evidence that a defendant's statements triggered an employer's investigation into an employee's conduct is not enough, by itself, to establish liability for wages and benefits lost because the employer later fired the employee for different misconduct established by evidence other than the defendant's statements."

*Id.*

The plaintiff must show the defendant's conduct was a substantial factor in the termination itself, not merely in initiating inquiry. *Herrera* rejected causation where the employer independently determined the employee had been untruthful during the investigation, an intervening cause. Plaintiff offers no information on the school's decision-making process. Plaintiff fails to provide any evidence that it was Defendants' statements or actions that led to the decision not to renew Plaintiff's contract.

Here, even accepting Plaintiff's allegations as true, Defendants' blog post could only have prompted the school to examine Plaintiff's own public conduct (Reznichenko Decl. ¶¶22–23). As of the date of this motion, Plaintiff's Facebook profile remains public. Any termination decision based on the school's own evaluation of Plaintiff's publicly available statements is an independent intervening cause, foreclosing causation under *Herrera*.

The sharpest contrast is *Giordano v. Aerolift, Inc.*, 109 Or. App. 122 (1991), a rare case where a plaintiff succeeded. There, the defendant sought to "build a case" for the plaintiff's termination; instructed the personnel director to create a *false* disciplinary record; and, acted with the specific intent to manufacture grounds for firing. The Court held that where a defendant fabricates evidence, an improper motive alone can support liability. (*Id.*) None of that is alleged here. Defendants did not create false documents

or initiate any internal process.  Defendants criticized publicly visible statements, disclosed the factual basis for her views, and expressed opinions and concerns, which constitutes conduct far removed from the fabrication and manipulation in *Giordano*.

    **4.**    **Plaintiff cannot establish a probability of prevailing on Count 4: Intentional Infliction of Emotional Distress.**

An intentional infliction of emotional distress (IIED) claim requires conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency."  *McGanty v. Staudenraus*, 321 Or. 532, 543 (1995).  This standard is "a rigorous one," and Oregon courts emphasize that speech alone, especially public commentary or criticism, almost never satisfies it.  In *Wheeler v. Marathon Printing, Inc.*, the court emphasized:  "No punitive damages can be awarded for purely expressive speech under the First Amendment."  157 Or. App. 290, 307–08 (1998).

Defendants' conduct consists entirely of public commentary on a public issue, quoting Plaintiff's own posts, and expressing disclosed-fact opinions.  Because the conduct is purely expressive, *Wheeler* bars IIED liability as a matter of law.

    **i.**    **Oregon courts routinely reject IIED claims based on criticism, complaints, or public commentary.**

Oregon decisions overwhelmingly hold that ordinary speech—even harsh, unwelcome, or upsetting speech—does not approach the level of "extraordinary transgression" required.

In *House v. Hicks*, 218 Or. App. 348 (2008), repeatedly reporting a person to campus and city police was not outrageous as a matter of law.  In *Delaney v. Clifton*, 180 Or. App. 119 (2002), the court dismissed IIED claims because "the conduct, as a matter of law, was not an extraordinary transgression," even though the plaintiff found it

deeply upsetting.  In *Rosenthal v. Erven*, 172 Or. App. 20 (2001), rude, accusatory, and hurtful statements were deemed insufficient.  In *Shay v. Paulson*, 131 Or. App. 270 (1994), even criminal forgery did not qualify as an "extraordinary transgression of socially tolerable conduct."  Compared to these cases, Defendants' blog post is not, under Oregon precedent, "beyond all bounds of decency."

> ii.    **Absence of any special relationship.**

Although a special relationship is not a formal element of IIED (*Staten v. Steel*, 222 Or. App. 17 (2008)), Oregon courts often use it in their analysis. *House v. Hicks* explains:

> "The most important contextual factor guiding a court's classification of conduct as extreme and outrageous is whether a special relationship exists… courts are more likely to categorize conduct as outrageous when undertaken by the dominant party in a legal relationship."

218 Or. App. at 358–59.

Likewise, the court in *Delaney* held that "the lack of a relationship between the parties generally defeats a conclusion that the conduct is actionable through IIED."  The court in both *Rosenthal* and *House* dismissed claims specifically because the parties were strangers and the conduct, while upsetting, did not exceed the bounds of decency in that context.

Here, Plaintiff and Defendants are complete strangers. Defendants owed Plaintiff no special duty, wielded no power over her, and engaged only in public commentary. Under *House, Delaney, Staten,* and *Rosenthal*, this alone strongly forecloses IIED.

> iii.    **Plaintiff's repeated improper use of the term "Doxxing".**

Plaintiff repeatedly characterizes Defendants' conduct as "doxxing," but that label is not legally significant here.  The term "doxxing" is rarely used in Oregon

statutes and caselaw, and when it is used, it refers to revealing private information.  The closest definition of the term "doxxing" is in the Court of Appeals' decision in *DeHart v. Tofte*, 326 Or. App. 720 (2023), where elected school-board members sued parents for posting their employer contact information in a Facebook group, alleging "doxxing" and emotional distress.  The court held that no liability exists when the information disclosed is already public and has been voluntarily publicized by the plaintiff.

Here, Plaintiff's situation is identical in all legally relevant respects.  Defendants posted only public-facing information that Plaintiff herself has made available online and that remains publicly accessible as of the date of this motion (Reznichenko Decl. ¶¶8–9, 12–17, 19-21; Exs. 2–6).  None of it constitutes "personal information" within the meaning of ORS 30.835, which covers home addresses, personal phone numbers, employer contact information, only when private, and other private identifiers.  *See* ORS 163.730(1), (3), (10) (defining "alarm," "contact," and protected categories of personal information).  Public information, even if critical, unflattering, or widely shared, does not qualify.

## CONCLUSION

Plaintiff's claims against StopAntisemitism and Ms. Reznichenko are exactly the type of meritless speech-punishing claims ORS 31.150 was enacted to halt at the outset. Plaintiff cannot meet her burden to "establish a probability that [she] will prevail on the claim by presenting substantial evidence to support a prima facie case."  ORS 31.150(3). Each of her causes of action targets protected commentary based on her own publicly disseminated statements, and each fails as a matter of law under the First Amendment and Article I, section 8 of the Oregon Constitution.

Accordingly, Defendants respectfully request that the Court strike all claims under ORS 31.150 and, in the alternative, dismiss the Complaint under Rule 12(b)(6). Defendants further request an award of their reasonable attorney fees and costs pursuant to ORS 31.152(3).

DATED:  November 18, 2025.

MURPHY & BUCHAL LLP

*s/ James L. Buchal*
James L. Buchal, OSB No. 921618
P.O. Box 86620
Portland, OR  97286
Tel:  503-227-1011
E-mail:  jbuchal@mbllp.com

Abra Siegel*
NATIONAL JEWISH ADVOCACY
CENTER
3 Times Square
New York, NY 10036
Tel:     312 487 1281
Email: abra@njaclaw.org

*Pro Hac Vice Application Forthcoming*

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 18, 2025, I electronically filed the foregoing

**SPECIAL MOTION TO STRIKE OR, IN THE ALTERNATIVE, MOTION TO**

**DISMISS AND MEMORANDUM OF LAW IN SUPPORT THEREOF** with the

Clerk of the Court using the CM/ECF system, which will send notification of this filing

to the attorneys of record and all registered participants.

*/s/  James L. Buchal*
James L. Buchal