**J. Clay McCaslin**, OSB No. 041684
E-mail address:  clay@mccaslinfirm.com
Law Office of J. Clay McCaslin, PC
1211 SW Fifth Avenue, Suite 2250
Portland, OR 97204
Telephone:  (503) 239-1910
Fax:  (503) 926-9150
        *Attorney(s) for Plaintiff*

THE HONORABLE ADRIENNE C. NELSON

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

SUSAN M. LEWIS,

      Plaintiff,

   v.

STOPANTISEMITISM, a private entity,
individually and doing business as
STOPANTISEMITISM.ORG, and LIORA
REZNICHENKO, an individual,

      Defendants

Case No. 3:25-cv-02082-AN

**PLAINTIFF'S RESPONSE TO
DEFENDANTS' SPECIAL MOTION
TO STRIKE OR, IN THE
ALTERNATIVE, MOTION TO
DISMISS**

NOW COMES plaintiff herein, Susan M. Lewis, and responds to Defendants' Special

Motion to Strike Or, in the Alternative, Motion to Dismiss as follows:

**PRELIMINARY STATEMENT**.

This case stems from a series of false and malicious statements that defendants posted on

social media platforms regarding Susan Lewis, a music teacher in Portland, Oregon, who is the

plaintiff in this case ("Ms. Lewis" or "Plaintiff").   Defendants' false statements included blatant

mischaracterizations and distortions of social media posts that Ms. Lewis had made relating to

**PLAINTIFF'S RESPONSE TO DEFENDANTS' SPECIAL MOTION TO STRIKE**

**Page 1**

Israel, Palestine, and the war in Gaza.  The statements that defendants made and published online regarding plaintiff were false--not mere opinion or hyperbole--and they caused professional harm, reputational harm, and other damages for which plaintiff seeks recovery in this case.

Defendants' characterizations of Plaintiff's social media posts go beyond protected opinion and constitute false factual statements that damaged Plaintiff's professional reputation and caused her tangible harm.  Defendants not only mischaracterized Ms. Lewis's statements but specifically targeted her employment by urging their mass of online followers to contact Valley Catholic Music School, where Ms. Lewis was employed as an independent contractor, and demand that she be removed from her position as a private music teacher.   That very same day, Ms. Lewis learned that her contract with Valley Catholic Music School would not be renewed. Defendants subsequently celebrated Ms. Lewis's removal from her position and boasted online regarding their own role in causing the termination of her teaching contract at Valley Catholic.

Oregon's anti-SLAPP statute protects legitimate public discourse, but it does not shield speakers from liability for false statements that cause damage to a person's reputation and vocation.  As demonstrated herein, plaintiff has presented substantial evidence establishing a probability of prevailing on each of her claims.  Accordingly, this Court should deny Defendants' Special Motion to Strike.

## FACTUAL BACKGROUND

Defendant StopAntisemitism is a privately funded advocacy group focused on combating criticism of Israel and its policies by publicly exposing and shaming (or "doxxing") individuals whom it accuses of being antisemitic. *Complaint* ¶ 5.  Plaintiff Susan M. Lewis is a professional musician and music educator who was employed as an independent contractor at Valley Catholic Music School ("Valley Catholic") during the 2023–2024 academic year. *Declaration of Susan M.*

**PLAINTIFF'S RESPONSE TO DEFENDANTS' SPECIAL MOTION TO STRIKE**

*Lewis* ("Lewis Decl."), at ¶ 5.  In July 2024, defendants reviewed plaintiff's publicly accessible Facebook profile.  *Declaration of Liora Reznichenko* ("Reznichenko Decl.") at ¶ 8.   Plaintiff's profile contained numerous posts addressing Israel, Hamas, and Zionism, including statements critical of Israeli policies and Zionism, as well as posts referencing the war in Gaza.  *Id.* at ¶¶ 13-16; Exs 2-6).

On or about August 21, 2024, defendants published a series of false and malicious statements on their X.com page regarding Ms. Lewis.  (Lewis Decl., at ¶5; Ex 1).   Defendants' false statements included numerous mischaracterizations and distortions of posts that Ms. Lewis had previously made on her personal Facebook page relating to Israeli policies, Hamas, Zionism, and the war in Gaza.  *Id.* at ¶¶ 4-5; Ex 1.  Defendants' post included the name of Ms. Lewis's former employer, Valley Catholic Music School, along with the school's contact information, and urged its social media followers to contact the school for the express purpose of urging Ms. Lewis's firing.  *Id*. at ¶ 5; Ex 1.   That very same day, Ms. Lewis learned that her contract with Valley Catholic would not be renewed.  *Id*. at ¶ 7.

On August 25, 2024, defendants featured Ms. Lewis in a post to their Facebook page entitled "Corrupting the Classroom," in which they posted her headshot next to the following false and misleading statements, which defendants wrongfully attributed to Ms. Lewis:   "Calls upon Hamas to destroy Israel"; "Denies the Jewish connection to Israel" "Claims the Jews Control Humanity"; and concluding with: "Students at Valley Catholic High School are in grave danger under Sue Lewis" *Id*. at ¶ 9-10; Ex 2.  Defendants' post also included a call to action encouraging concerned individuals to contact Valley Catholic and demand that Ms. Lewis be removed from her teaching position.  *Id.* at ¶ 5, ¶10, Ex 1.  That same day, August 25, 2024, Plaintiff received a private Facebook message from a user purporting to be on behalf of defendant StopAntiSemitism,

**PLAINTIFF'S RESPONSE TO DEFENDANTS' SPECIAL MOTION TO STRIKE**

in which the sender boasted, "Thanks to our advocacy, Sue Lewis has been terminated by her employer, Valley Catholic High School." *Id*. at ¶ 11; Ex 3.

On September 18, 2025, Defendants updated their August 21 post on their X.com page with the following: "UPDATE: antisemitic Sue Lewis is thankfully no longer teaching at Valley Catholic High School."   As with the original post, defendants' updated post triggered a torrent of hate comments and messages, some of which were even violent and threatening.   *Id*. at ¶ 6.

## SUMMARY OF ARGUMENT

As an initial matter, defendants do not satisfy the threshold test under Oregon's anti-SLAPP statute because they have failed to demonstrate that plaintiff's personal views about a matter of public concern *are themselves* a matter of public concern within the meaning of ORS 31.150.  Because defendants fail to satisfy their burden under ORS 31.150, the Court should deny Defendants' Special Motion to Strike.  However, even if defendants have met their burden under ORS 31.150, Plaintiff has substantial evidence to support a *prima facie* case for each of her four separate claims under Oregon's anti-SLAPP statute.

First, Plaintiff's defamation claim is supported by substantial evidence that defendants made false factual assertions about her, not merely protected opinions. Defendants' characterizations of Plaintiff's social media posts constitute provably false statements that damaged her professional reputation.

Second, plaintiff's false light invasion of privacy claim is supported by evidence that Defendants' characterizations placed her in a false light that would be highly offensive to a reasonable person. Even if defendants disclosed screenshots of plaintiff's actual posts, their characterizations created false impressions and beliefs, as is clearly demonstrated in the various comments and reactions of defendants' social media followers.

**PLAINTIFF'S RESPONSE TO DEFENDANTS' SPECIAL MOTION TO STRIKE**

**Page 4**

Third, Plaintiff's tortious interference claim is supported by evidence that Defendants intentionally interfered with her contractual relationship with Valley Catholic Music School through improper means, namely through defamation and disparaging falsehoods. The close temporal connection between defendants' publication of their defamatory posts and the non-renewal of plaintiff's contract, not to mention defendants' open celebration and even claiming credit for her "firing" in their own social media posts, supports a reasonable inference of causation.

Finally, Plaintiff's intentional infliction of emotional distress claim is supported by evidence that Defendants' conduct in targeting Plaintiff's employment through false characterizations of her social media posts constitutes an extraordinary transgression of socially tolerable conduct.

## LAW AND ARGUMENT

### I.    LEGAL STANDARD

Anti-SLAPP motions are resolved according to a two-step burden-shifting process. First, the court must determine whether the defendant has established that the claim that is the subject of the motion "arises out of" one or more protected activities described in ORS 31.150(2). *See* ORS 31.150(4). Second, if the defendant meets that burden, "the burden shifts to the plaintiff in the action to establish that there is a probability that the plaintiff will prevail on the claim by presenting substantial evidence to support a prima facie case." *Id.*

In making that determination, notably, the Court *may not weigh the evidence* of the defendant against that produced by the plaintiff. *Young v. Davis* 259 Or. App. 497, 501 (2013)(emphasis added). Rather, the Court may consider the defendant's evidence only for the limited purpose of determining whether it defeats the plaintiff's case *as a matter of law*. *Id.* If the plaintiff succeeds in meeting that burden, the special motion to strike must be denied. *Id.*

**PLAINTIFF'S RESPONSE TO DEFENDANTS' SPECIAL MOTION TO STRIKE**

In evaluating a special motion to strike under ORS 31.150, the Court must consider the facts underlying plaintiff's claims "in the light most favorable to plaintiff." *Bryant v. Recall for Lowell's Future Comm.,* 286 Or. App. 691, 692-93 (2017). In doing so, the Court must "consider plaintiff's evidence and draw the reasonable inferences from that evidence in favor of the plaintiff." *Id.* (*citing Plotkin v. SAIF*, 380 Or. App. 812, 815 (2017). ORS 31.150 is intended only "to weed out meritless claims meant to harass or intimidate – not to require that a plaintiff prove its case before being allowed to proceed further." *Young*, 259 Or. App. at 508 (citing *Staten v. Steel*, 222 Or. App. 17, 32 (2008) ("The purpose of the special motion to strike procedure . . . is to expeditiously terminate unfounded claims that threaten constitutional free speech rights, not to deprive litigants of the benefit of a jury determination that a claim is meritorious.")).

## II.    DEFENDANTS FAIL TO MEET THEIR BURDEN UNDER ORS 31.150 (2).

ORS 31.150(2) initially places the burden on the defendant to show that the claim "arises out of" one or more protected activities described in subsection (2)(c), which includes "[a]ny oral statement made, or written statement or other document presented, in a place open to the public or a public forum in connection with an issue of public interest."

Defendants contend that their false and defamatory statements regarding Ms. Lewis are a matter of "public interest" within the meaning of the statute. This is incorrect. While issues relating to Israel, Palestine, and the war in Gaza are clearly matters of public interest and debate, Defendants' statements about Ms. Lewis and/or about Ms. Lewis's own personal viewpoints do not address any of those issues or engage in the substance of any of those issues. Rather. Defendants' statements target *the speaker*, a specific individual, Susan Lewis, and her *statements about* Israel and the war in Gaza. Defendants' statements about Ms. Lewis do not actually address any of these underlying issues raised in her posts and are nothing more than a smear campaign and

**PLAINTIFF'S RESPONSE TO DEFENDANTS' SPECIAL MOTION TO STRIKE**

**Page 6**

character assassination against her, which defendants orchestrated and carried out through the public misrepresentation and distortion of her own protected statements made wholly outside of her employment at Valley Catholic.   Because defendants fail to satisfy their burden under ORS 31.150(2, the Court should therefore deny Defendants' Special Motion to Strike.

## III.     PLAINTIFF'S EVIDENCE SUPPORTS A *PRIMA FACIE* CASE.

If the Court finds that defendants meets then initial burden of under ORS 31.150(2), then the burden shifts to the plaintiff to present substantial evidence to support a prima facie case.  ORS 30.150(4).  A plaintiff meets its burden under ORS 31.150(4) by submitting evidence that "would permit a reasonable factfinder" to rule in the plaintiff's favor.  *Neumann v. Liles*, 358 Or. 706, 715 (2016).   "[W]hether or not it is 'likely' that the plaintiff will prevail is irrelevant in determining whether it has met the burden of proof set forth by ORS 31.150(3)."  *Young*, 259 Or. App. at 508.

### A.     Plaintiff has Substantial Evidence to Support a Claim for Defamation.

To prevail on her claim for defamation, Plaintiff need only establish: 1) that defendants made a defamatory statement(s) about plaintiff, and that 2) defendants published the defamatory statement(s) to a third party.  *Neumann,* 358 Or at 711.  A defamatory statement is "one that would subject the plaintiff to hatred, contempt, or ridicule or tend to diminish the esteem, respect, goodwill or confidence in which [the plaintiff] is held or to excite adverse, derogatory or unpleasant feelings or opinions against [the plaintiff]."  *Id*.

To determine whether a defendant's statement(s)  protected under the First Amendment, Oregon courts apply a three-part inquiry: "(1) whether the general tenor of the entire publication negates the impression that the defendant was asserting an objective fact; (2) whether the defendant used figurative or hyperbolic language that negates that impression; and (3) whether the statement in question is susceptible of being proved true or false."  *Id*. at 719.  This analysis must consider

**PLAINTIFF'S RESPONSE TO DEFENDANTS' SPECIAL MOTION TO STRIKE**

the defendant's words in the context in which they were made.  *Id*.

### 1. Defendants' statements are demonstrably false.

### a) Plaintiff has never "called upon Hamas to destroy Israel."

The statement that Ms. Lewis "called upon Hamas to destroy Israel" is demonstrably false. Ms. Lewis's actual November 2, 2023 post stated: "Yeah these Hamas militants are going to wipe out Israel with their homemade bombs, small arms, hang gliders, grenades and sling shots. Be afraid, be very afraid."  (Reznichenko Decl.¶ 13; Ex 2).

Ms. Lewis's actual statement includes nothing that could possibly be construed a rallying cry to Hamas or any other such interpretation.  On the contrary, Ms. Lewis was simply stating her belief that Hamas could not prevail in an armed conflict with Israel.   Ms. Lewis's post highlights her perception that Hamas was badly outmatched by Israel's armed forces.  That is not even close to "call[ing] upon Hamas to destroy Israel."

Applying the three-part test from *Neumann v. Liles*, defendants' characterization constitutes a false and defamatory statement rather than protected opinion.  *See Neumann,* 358 Or at 719.  First, the general tenor of defendants' publication, entitled "Corrupting the Classroom," presents their statements as factual exposés of "dangerous" teachers.  *Id*.   Second, defendants did not use figurative or hyperbolic language that would negate the impression they were asserting objective facts.  *Id*.  Third, the statement is susceptible of being proved true or false by comparing it to Ms. Lewis's actual post, which is clearly *no*t supportive of Hamas.  *Id*.

Defendants' statement is that Ms. Lewis actively encouraged Hamas to destroy Israel, which is a provably false assertion when compared to her actual post.   This mischaracterization is defamatory because it imputes conduct that injuriously affects Ms. Lewis's reputation as a music teacher and tends to subject her to hatred, contempt, ridicule, and derision.  *Id*. at 711-712.

**PLAINTIFF'S RESPONSE TO DEFENDANTS' SPECIAL MOTION TO STRIKE**

**Page 8**

**b) Plaintiff has never "denie(d) the Jewish connection to Israel."**

Defendants also state that Ms. Lewis "denies the Jewish connection to Israel." This statement is not only puzzling, but when examined under the *Neumann* test, also constitutes a false factual assertion. The statement is presented as an objective fact about Ms. Lewis's beliefs, without any hyperbolic language that would signal an opinion statement. Moreover, it is susceptible of being proved true or false by examining Lewis's actual posts.

Plaintiff's posts criticized Israel's policies and Zionism, including sharing a post defining Zionism as "an inherently violent & terroristic movement for colonizing Palestine." However, criticism of Israeli policies or Zionism as a political movement does not equate to denying the Jewish connection to Israel. Plaintiff has never "denied the Jewish connection" to Israel. Her condemnation of genocide was not a denial of Israel's own right to exist, nor is it an expression of antisemitism or racism. Ms. Lewis was commenting on a geopolitical conflict involving the nation of Israel, not maligning any particular race or ethnicity or denying its connection to Israel. This mischaracterization falsely attributes to Lewis a belief she did not express, which is defamatory because it portrays her as holding antisemitic views that would harm her professional reputation as a teacher. *Id*. at 711-12. Rather than engage in an open debate with her on any of the underlying issues, defendants instead mischaracterized plaintiff's personal opinions and publicly maligned her with accusations of bigotry and racism. That is the essence of defamation.

**c) Plaintiff has never claimed that "Jews control humanity."**

Defendants falsely state that Ms. Lewis claimed that "Jews control humanity." Lewis's actual shared post stated: "Zionist Jews have managed to mentally condition humanity to accept and remain silent as they commit genocide in Palestine." Defendant's mischaracterization of plaintiff's actual statement fails the *Neumann* test and constitutes a false factual statement. First,

**PLAINTIFF'S RESPONSE TO DEFENDANTS' SPECIAL MOTION TO STRIKE**

the general tenor of defendants' publication presents this as a factual claim about Lewis's beliefs. *Id.* Second, defendants used no figurative language that would signal opinion. *Id.* Third, the statement is susceptible of being proved false by comparing it to Lewis's actual post. *Id.*

Ms. Lewis's shared post, while controversial, made a specific claim about "Zionist Jews" and their alleged influence regarding a specific issue (Palestine). Defendants' characterization broadened this to a claim about "Jews" generally "controlling humanity," which evokes antisemitic conspiracy theories far beyond what plaintiff's post actually stated. Defendants do not accurately quote Ms. Lewis's original statement and do not provide any of the context for statement. Ms. Lewis's post is not tantamount to claiming that "Jews control humanity," or anything even close. This is a blatant mischaracterization of Ms. Lewis's words in a transparent effort to malign her. This mischaracterization is defamatory because it falsely portrays Ms. Lewis as promoting antisemitic conspiracy theories, thereby ascribing characteristics to her that degrade her professional reputation and exposes her to hatred, contempt, and ridicule. *Neumann,* 358 Or. at 711-712. The statement is false and defamatory on its face.

### d) Plaintiff has never endangered her students.

Defendants conclude their diatribe against plaintiff with the following statement: "Students at Valley Catholic High School are in grave danger under Sue Lewis." (Lewis Decl, Ex 1). This is perhaps the most serious, and also the most injurious, of defendants' false statements about plaintiff. This statement, analyzed under the *Neumann t*est, also constitutes a false factual assertion rather than a protected opinion. *Id.* The statement is presented as a factual conclusion about the safety of Ms. Lewis's students, without hyperbolic language that would signal opinion. *Id.* It is also susceptible of being proved true or false through evidence about Ms. Lewis's actual conduct as a teacher. *Id.*

**PLAINTIFF'S RESPONSE TO DEFENDANTS' SPECIAL MOTION TO STRIKE**

The word "danger" is defined as "[j]eopardy; exposure to loss or injury; peril." *Black's Law Dictionary*, 4th Ed. Rev. (1968).    Despite that defendants use the term quite cavalierly, the word has a definitive meaning—a meaning that is *per se* harmful and injuries to a person's reputation, particularly that of a teacher.  *Id*. at 711-12.  Most importantly, defendants have absolutely no evidence to support the truth of this statement.    That is because the statement is patently false. Ms. Lewis never endangered or injured any of her students at any time.   Moreover, Ms. Lewis never discussed or voiced her political views or opinions regarding world affairs, including the war in Gaza, with her students at Valley Catholic in any event.  (Lewis Decl. ¶ 4).

This statement is particularly damaging as it directly relates to Lewis's professional competence and fitness as a teacher.  It implies that Lewis poses a danger to her students based on her political views, without any evidence for this false statement.  This constitutes defamation because it injuriously affects Lewis's professional reputation as a music teacher and exposes her to hatred, contempt, and ridicule.  *Neumann*, 358 Or at 711-12.

Defendants may argue that providing screenshots of Ms. Lewis's posts alongside their mischaracterizations transforms their statements into protected opinion.   However, this argument fails under established defamation law.

Under Oregon law, defamation by implication occurs when a defamatory inference is drawn from a facially nondefamatory communication.  *Reesman v. Highfill*, 327 Or 597, 604 (1998). For such claims, "the inference that the plaintiff seeks to draw from the facially nondefamatory communication must be reasonable." *Id*.  In this case, the inferences defendants drew from Ms. Lewis's posts were not reasonable interpretations but instead were significant distortions that materially altered their meaning.   When, as here, the characterization substantially distorts the meaning of the disclosed facts, it remains actionable as defamation.  *Id.*

**PLAINTIFF'S RESPONSE TO DEFENDANTS' SPECIAL MOTION TO STRIKE**

### 3. Defendants' statements caused damage to plaintiff.

Defendants' August 21, 2024 post included an express call to action: "Concerned? Email info@valleycatholic.org." (Reznichenko Decl.¶ 13; Ex 1; Lewis Decl., ¶ 3, Ex 1). This call to action by defendants, along with the timing of Ms. Lewis's dismissal by Valley Catholic, supports a causal connection between defendants' statements and the non-renewal of her teaching contract. As Oregon courts have recognized, "drawing all reasonable inferences in favor of plaintiff, the evidence at least supports a prima facie case that defendants' statements had a 'causal effect' on the termination of employment." *Plotkin*, 280 Or. App. at 824. A close temporal connection can be circumstantial evidence of causation. *Id*. *see also Meyer v. Oregon Lottery*, 292 Or. App. 647, 681-82 (2018).

Moreover, in their September 18, 2024 posting to X.com, defendants and their online mob of social media followers mock Ms. Lewis, vilify her, and celebrate the termination of her teaching contract at Valley Catholic. (Lewis Decl.¶ 6; Ex 1). Many of the user comments in response to the defendants' X.com posts are crude, vulgar, violent, and even threatening. *Id*. Defendants make no secret of their malicious motives in their careful orchestration, publication, and dissemination of falsehoods about Ms. Lewis, which they specifically intended to harm her professional reputation.

The essence of the tort of defamation is reputational injury and damage to reputation. *Neumann*, 358 Or at 711. In the professional context, a statement is defamatory if it falsely "ascribes to another conduct, characteristics or a condition incompatible with the proper conduct of his lawful business, trade, [or] profession." *Id*. at 711-12. By directing their defamatory statements at their followers with a call to action, defendants went beyond merely expressing opinions and instead engaged in conduct specifically designed to interfere with Ms. Lewis's

**PLAINTIFF'S RESPONSE TO DEFENDANTS' SPECIAL MOTION TO STRIKE**

employment relationship and her professional reputation.    Defendants' actions, combined with their gleeful celebration of her dismissal by Valley Catholic, demonstrate that they intended to cause—and in fact *did cause*-- both professional and reputational damage to Ms. Lewis and are therefore liable for defamation.   (Lewis Decl. ¶ 5-14; Exs 1-6).

## B.   Plaintiff Has Substantial Evidence Supporting a *Prima Facie* False Light Claim.

To establish a false light claim, a plaintiff must show: (1) the defendant gave publicity to a matter concerning the plaintiff that placed the plaintiff before the public in a false light; (2) the false light would be highly offensive to a reasonable person; and (3) the defendant had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the plaintiff would be placed.  *Reesman*, 327 Or. at 607-08.

### 1.   Defendants falsely portrayed plaintiff.

A false light claim requires a false portrayal that would be highly offensive to a reasonable person. *Id. at* 607.  The portrayal must lead "others to believe something about a person that is not true."   *Id.* at 608.   Defendants' characterizations of Ms. Lewis's Facebook posts were false portrayals that misrepresented her actual statements.

First, defendants falsely characterize Ms. Lewis's post(s) in stating that she "calls upon Hamas to destroy Israel."  Ms. Lewis actual post stated: "Yeah these Hamas militants are going to wipe out Israel with their homemade bombs, small arms, hang gliders, grenades and sling shots. Be afraid, be very afraid." (Reznichenko Decl.¶ 13; Ex 2).  The context and tone of Ms. Lewis's post indicates she was *not* calling for Hamas to destroy Israel, but rather facetiously commenting on the implausibility of Hamas destroying Israel.  Defendants' characterization, however, falsely portrayed Ms. Lewis as supporting Hamas and terrorism.  That was a false portrayal.

**PLAINTIFF'S RESPONSE TO DEFENDANTS' SPECIAL MOTION TO STRIKE**

Second, defendants claimed Ms. Lewis "denies the Jewish connection to Israel." (*Id*., Ex 1). Ms. Lewis's posts criticized Israel's policies and Zionism as a political movement, not the historical Jewish connection to the land. This characterization falsely portrayed Ms. Lewis as denying Jewish history, which she did not do.

Third, defendants asserted Ms. Lewis "claims Jews control humanity." (*Id*., Exs 1, 5). This was a false characterization of a post that Ms. Lewis had previously shared, which stated: "Zionist Jews have managed to mentally condition humanity to accept and remain silent as they commit genocide in Palestine." *Id*., Ex 5. This post criticized a specific political ideology (Zionism), not Jews as a whole. Defendants' characterization falsely portrayed Ms. Lewis as promoting antisemitic conspiracy theories, when in fact, her criticism was aimed solely at a political ideology and specific geopolitical events happening on the ground.

Finally, defendants conclude that "students at Valley Catholic are in grave danger under Sue Lewis." *Id*., Ex 1. This statement falsely portrayed Lewis as posing a danger to her students, despite absolutely no evidence that she ever harmed or endangered any of her students.

### 2. Defendants' false portrayals were highly offensive to a reasonable person.

The false portrayals of Ms. Lewis by defendants are highly offensive to a reasonable person. The false portrayals by defendants accused Ms. Lewis of supporting terrorism, denying Jewish history, promoting antisemitic conspiracy theories, and posing a danger to students. These characterizations go beyond mere criticism and constitute "an extraordinary transgression of the bounds of socially tolerable conduct." *Rosenthal v. Erven*, 172 Or. App. 20, 23 (2001).

### 3. Defendants acted with reckless disregard for the truth.

Substantial evidence supports a *prima facie* case that defendants acted with knowledge of or reckless disregard for the falsity of their characterizations of Ms. Lewis and her personal views.

**PLAINTIFF'S RESPONSE TO DEFENDANTS' SPECIAL MOTION TO STRIKE**

Defendants had access to Lewis's actual posts, yet defendants deliberately mischaracterized them to suit their own agenda.  The stark contrast between Lewis's actual statements and defendants' characterizations demonstrates that defendants either knew their characterizations were false or acted with reckless disregard for their truth or falsity.  Furthermore, defendants' celebration of her departure from Valley Catholic clearly demonstrates a malicious and spiteful motive in publishing their false portrayals of Ms. Lewis, which supports a *prima f*acie case for defendants' reckless disregard of the truth.  *Id.* at ¶ 6, ¶ 8, Ex 1.

### C.   Plaintiff has Substantial Evidence to Support a *Prima Facie* Claim for Tortious Interference with Contractual Relations.

To prevail on a claim for tortious interference with contractual relations, plaintiff must establish: (1) the existence of a professional or business relationship; (2) intentional interference with that relationship; (3) by a third party; (4) accomplished through improper means or for an improper purpose; (5) a causal effect between the interference and damage to the economic relationship; and (6) damages. *McGanty v. Staudenraus,* 321 Or. 532, 535 (1995).

In the present case, Susan Lewis had a contractual relationship with Valley Catholic as an independent contractor for the 2023-2024 academic year.  This satisfies the first element of the tort.   Defendants intentionally interfered with plaintiff's contractual relationship by publishing statements about plaintiff that characterized her as supporting terrorism, denying Jewish history, promoting antisemitic conspiracy theories, and endangering her students.  Defendants directed these statements at its social media followers with the apparent purpose of affecting Ms. Lewis's employment, as evidenced by their direct call to action: "Concerned? Email info@valleycatholic.org."  (Reznichenko Decl.¶ 13; Ex 2).   This conduct satisfies the second and third elements of the tort, as defendants are third parties to the contractual relationship

**PLAINTIFF'S RESPONSE TO DEFENDANTS' SPECIAL MOTION TO STRIKE**

between plaintiff and Valley Catholic, and their actions demonstrate intentional interference with that relationship.

### 1.    Defendants used improper means to interfere with plaintiff's contract.

Under Oregon law, an interference in another party's contractual relations is tortious if it "is wrongful by some measure beyond the fact of the interference itself, such as by improper means or improper motive." *N.V. Transp., Inc. v. V&Y Horizon, Inc*., 302 Or. App. 707, 720 (2020). Improper means may include "violence, threats or other **intimidation, deceit or misrepresentation,** bribery, unfounded litigation, **defamation, or disparaging falsehood**." *Id.* (emphasis added). Oregon law recognizes that "either the pursuit of an improper objective of harming plaintiff or the use of wrongful means that in fact cause injury to plaintiff's contractual or business relationships may give rise to a tort claim for those injuries.*" Top Serv. Body Shop, Inc. v. Allstate Ins. Co*., 283 Or. 201, 204 (1978).

As discussed at length above, defendants' published statements about Ms. Lewis contain false factual statements and mischaracterizations. Defendants mischaracterized plaintiff's social media posts as "calls upon Hamas to destroy Israel," "denies the Jewish connection to Israel," "claims Jews control humanity," and concluding that "students at Valley Catholic are in grave danger under Sue Lewis." (Lewis Decl, Ex 1). These statements are clearly defamatory and constitute disparaging falsehoods about Ms. Lewis her professional capacity as a teacher at Valley Catholic. *See Neumann,* 358 Or at 711-12. Defendants' false characterizations of plaintiff's social media posts constitute defamation and therefore satisfy the improper means element of tortious interference.

**PLAINTIFF'S RESPONSE TO DEFENDANTS' SPECIAL MOTION TO STRIKE**

**2.    Plaintiff can establish causation between defendants' interference and the non-renewal of her teaching contract.**

Plaintiff can establish a causal connection between defendants' statements and the non-renewal of her contract with Valley Catholic Music School.  A close temporal connection can be circumstantial evidence of causation.  *Boynton-Burns v. Univ. of Oregon*, 197 Or App. 373, 380-81 (2005).  The timing of the non-renewal shortly after or the same day as defendants' publication of their false statements creates a reasonable inference of causation,

Moreover, defendants specifically targeted Ms. Lewis's employment by directing their false statements to their online followers and urging them to contact Valley Catholic and demand the removal of Ms. Lewis from her teaching position.  (Lewis Decl. ¶ 5; Ex 1).   Valley Catholic terminated her contract the very same day.   *Id*. at. ¶ 7.  Defendants went on to boast about their role in bringing about Ms. Lewis's departure from Valley Catholic, including comments and direct messages to Ms. Lewis through social media platforms.  *Id*. at ¶¶ 8, 11-14; Exs 3-6).  This targeting suggests that defendants intended to—and did--interfere with Ms. Lewis's employment.

Oregon courts have similarly recognized that "drawing all reasonable inferences in favor of plaintiff, the evidence at least supports a *prima facie* case that defendant's statement to [a third party] had a 'causal effect'" on adverse employment action."  *Plotkin*, 280 Or App at 826.  This principle applies directly in the present case, where the close temporal connection between defendants' publication of their false statements and the non-renewal of plaintiff's contract supports a *prima facie* case of causation.  Given the evidence of defendants' defamatory statements directed at Ms. Lewis's employment, the explicit call to action encouraging communications with Valley Catholic, the close temporal connection between the publication of defendants' false statements and the non-renewal of plaintiff's contract, and defendants' own boasting of their role and influence

**PLAINTIFF'S RESPONSE TO DEFENDANTS' SPECIAL MOTION TO STRIKE**

in negatively impacting her employment, plaintiff has presented substantial evidence to support a *prima facie* case of causation.

**D**. **Plaintiff has Substantial Evidence Supporting a *Prima Facie* Claim for Intentional Infliction of Emotional Distress.**

To establish a claim for intentional infliction of emotional distress (IIED), a plaintiff must show: (1) the defendant intended to inflict severe emotional distress; (2) the defendant's acts were the cause of plaintiff's severe emotional distress; and (3) the defendant's acts constituted an extraordinary transgression of the bounds of socially tolerable conduct. Whether conduct constitutes an "extraordinary transgression of the bounds of socially tolerable conduct" is a "fact-specific inquiry, to be considered on a case-by-case basis, considering the totality of the circumstances." *Rosenthal*, 172 Or. App. at 23.

It is well established that a claim for the intentional infliction of emotional distress can be satisfied by speech. *See Snyder v. Phelps*, 562 U.S. 443, 465-66 (Alito, J., dissenting)(internal citations omitted). The First Amendment does not preclude liability for the intentional infliction of emotional distress by means of speech. *Id*. The Supreme Court has recognized that words may "by their very utterance inflict injury" and that the First Amendment does not shield utterances that form "no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality." *Id*. (citing *Chaplinsky* v. *New Hampshire*, 315 U.S. 568, 572 (1942); *Cantwell* v. *Connecticut*, 310 U.S. 296, 310 (1940)) ("[P]ersonal abuse is not in any proper sense communication of information or opinion safeguarded by the Constitution")). Accordingly, when grave injury is intentionally inflicted by means of an attack involving false statements, the First Amendment should not interfere with recovery. *Id.* at 466.

**PLAINTIFF'S RESPONSE TO DEFENDANTS' SPECIAL MOTION TO STRIKE**

### 1. Defendants' conduct constitutes an extraordinary transgression

Defendants' conduct in targeting plaintiff's employment through false characterizations of her social media posts constitutes an extraordinary transgression of socially tolerable conduct. Defendants not only mischaracterized plaintiff's posts in ways that portrayed her as supporting terrorism, denying Jewish history, promoting antisemitic conspiracy theories, and posing a danger to her students, but defendants also specifically targeted and directed these characterizations at plaintiff's employment with a call to action. This targeted approach, combined with the false and defamatory nature of defendants' characterizations, goes beyond mere criticism or commentary. It represents a deliberate attempt to interfere with plaintiff's employment relationship through false characterizations that foreseeably caused severe emotional distress. That is unconscionable.

### 2. Defendants intended to cause severe emotional distress.

Defendants' conduct demonstrates an intent to cause severe emotional distress. By targeting plaintiff's employment through false characterizations of her social media posts, defendants could reasonably foresee that their actions would cause plaintiff severe emotional distress. The deliberate nature of defendants' mischaracterizations, combined with their direct targeting of plaintiff's employer, supports a finding that defendants intended to cause plaintiff severe emotional distress. (Lewis Decl. ¶ Exs 1-6).

### 3. Defendants' conduct caused plaintiff severe emotional distress

Defendants' conduct caused plaintiff severe emotional distress. The non-renewal of Ms. Lewis's contract with Valley Catholic, which occurred shortly after defendants' publication of their false statements, caused plaintiff both economic harm and emotional distress. (Lewis Decl, ¶¶ 5-6, Ex 1). The false characterizations of Ms. Lewis's social media posts, which portrayed her as supporting terrorism, denying Jewish history, promoting antisemitic conspiracy theories, and

**PLAINTIFF'S RESPONSE TO DEFENDANTS' SPECIAL MOTION TO STRIKE**

posing a danger to her own students, would naturally cause severe emotional distress to any reasonable person and did so in the present case.

## III.    DEFENDANTS' MOTION IS UNTIMELY AND TIME-BARRED.

Finally, defendants' motion is untimely and should therefore be denied.  The timeframe for filing a responsive pleading following the removal of a civil action to federal court is governed by Fed. R. Civ. P. 81(c), which requires that a defendant must file a responsive pleading within seven (7) days after the removal is filed.  Fed. R. Civ. P. 81(c).  In the present case, defendants filed their Notice of Removal on November 7, 2025. (Document #1).  Defendants did not file their Special Motion to Strike until November 18, 2025. (Document #5).  That was beyond the maximum timeframe for defendants to respond to the Complaint, pursuant to Fed. R. Civ. P. 81 (c).

Furthermore, even if the Court instead applies the timeframes set forth under ORS 31.152(1), Defendants' motion is still untimely.   ORS 31.250(1) requires filing of a Special Motion to Strike within sixty days of service of the complaint.   Defendants were served with the Complaint in this on October 10, 2025.  (*See* Document 1-1, *Notice of Removal*, Exhibit 11).  Defendants' filing was outside of the 60-day timeframe under ORS 30.250(1).   Accordingly, the Court should deny Defendants' Special Motion to Strike as untimely.

### CONCLUSION

For all of the foregoing reasons, the Court should deny Defendants' Special Motion to Strike.

DATED this 16th day of December, 2025.

Respectfully Submitted,

LAW OFFICE OF J. CLAY MCCASLIN

/s/ J. Clay McCaslin
J. Clay McCaslin, OSB #041684
Attorney for Plaintiff Susan M. Lewis

**PLAINTIFF'S RESPONSE TO DEFENDANTS' SPECIAL MOTION TO STRIKE**